Bradley William Monical
Sid# 7803214
2606 State St.
Salem Oregon 97310

FILED 21 FEB '20 11:26 USDC-ORP

# IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF OREGON

| | | |
|---|---|---|
| Bradley W Monical , | ) | **Case No.  6:18-CV-00103-YY** |
| Plaintiff, | ) | |
| | ) | **Third Amendment of** |
| v. | ) | **Verified Civil Complaint w/** |
| | ) | **Jury Demand 42 USC§ 1983** |
| Marion County, | ) | |
| Sheriff - Jason Myers, | ) | |
| Marion County Jail Commander -- | ) | |
| Tad Larson, | ) | |
| Keefe Commissary Network LLC , | ) | |
| Deputy Straus, Deputy Dunnbarr, | ) | |
| Deputy Frieze, Deputy McGowan, | ) | |
| Deputy Knospe, & Cindy Gage | ) | |

**Defendants,**

I Bradley W. Monical do hereby declare, under the penalty of perjury, that he following is true to the best of my recollection for the facts contained in this 42 USC 1983 suit. My attached declaration with attachments substantiates all of my claims herein.

## I. Introduction

This is a 1983 civil action filed by Pro Se plaintiff, Bradley W. Monical, currently a State prisoner of the Oregon Department of Corrections (ODOC) at the Oregon State Penitentiary (OSP).  This suit alleges violations to plaintiff's Constitutional rights for Conditions of Confinement - Denial of exercise, Denial of access to the courts to file valid 2255 habeas petitions (1:17-CV-00474-MC), conditions of confinement claims upon the Jackson county jail (1:17-CV-00476-YY)  and Due process violation claim by the ODOC (3:17-CV-00501-YY)

This suit also alleges a failure to protect claim for an assault by two deputies and an accident injury caused by the defendant's neglect to fix issues that created an unnecessary danger to slip and fall caused by their issued footwear.

This claim involves the denial of my First Amendment Rights to freely communicate outside of the jail facility by charging an excessive fee, and in effect a tax, on both to mail first class standards envelopes - ( 2 1/2 times the governments postage rate ) and by also charging 4 times the cost % for paper/ per sheet — not allowing any written communication with the courts without paying these taxes.

In addition these defendants refused me the ability and right to contact my children in any way, for months, with fear of retaliation if I did so, for no legal

reason. These violations occurred between 12/16/2015 to 11/23/2016.

The final claim involving the conditions of confinement at the Marion county jail in which the defendants both denied indoor and outdoor exercise in violation of clearly established law and a denial of complete exercise of any merit by not allowing any appropriate footwear to actually exercise in.

These actions led to loss of health due to denial of exercise, multiple bruises to my body and injury to my back caused by the defendants beating as retaliation, loss of my ability to publish a book and loss of income due to defendants not allowing book to be mailed out, loss of my First amendment legal rights for lack of access to the courts for condition of confinement claim that I was not housed on (per county policy 3215 - (21)) and injury to my person by inadequate slip protection and refusal of defendants to fix prior to fall and violation of my First amendment right to communicate with my children freely, for months causing mental and emotional damages as a result to not being able to contact my children without any advanced warning as to why said conversations were being terminated.

## II.  Jurisdiction

This court has jurisdiction over the plaintiff's claims of violation to Federal

Constitutional Rights under 28 USC § 1331.

This court has jurisdiction over plaintiff's claims under 28 USC § 1334(a)(3), in that this action seeks redress the deprivation, under color of Statements law of rights secured by the acts of Congress providing Equal Rights of persons within the jurisdiction of the United States.

This court has supplemental jurisdiction over the plaintiff's State law claims under 28 USC §1367.

## III. Parties

### Plaintiff

Bradley W. Monical
SID # 7803214
2605 State Street
Salem, Oregon, 97310

### Defendant's

Marion County – :C/O Marion county counsel
P.O. Box 14500
Salem, Oregon, 97309

Is sued in its Monell liability capacity for violating both State and Federal laws through it's adoption of rules and institutional procedures that violate the Constitutional rights of inmates within it's facilities under ORS 169.076.  The

denial of exercise and access to the courts claims were both by institutional

policy and state law. Marion County, the subdivision institutions and the county

commissioners were all under the color of both State and Federal laws at all

times relevant to this action.

**Keefe Commissary Network LLC (C/O Jim Perry )**
**13369 Valley Bld.**
**Fontana, CA 92335**

Is sued in its individual capacity for violating both State and Federal laws

through it's illegal profiting of both paper and U.S. prepaid postage products to

inmates at the Marion County Jail through it's contract with Marion county.  The

defendants were in violation of U.S. code  for the sales of these postage

products which hampered first amendment rights and equal protections rights

for charging different rates for postage for equally situated person. This

defendant was under the color of both State and Federal laws at all times

relevant to this action.

**Tadd Larson :**

Was an employee of the Marion County Sheriff's Office, in charge of

operations of it's institutional division at all times relevant to this to this suit.  He

is sued in both his personal and professional capacities for personally allowing

county policy to be enforced that denied me of my constitutional rights of exercise and access to the courts.  He was under the color of both State and Federal law at all times relevant to this action.


## Deputy Dunnbarr:

Was an employee of the Marion County Sheriff's Office, in charge of the legal library in the MCSO - institutional division at all times relevant to this to this suit.  He was under the color of both State and Federal law at all times relevant to this action. He is sued in both his personal and professional capacities for personally allowing county policy to be enforced that denied me of my constitutional rights of access to the courts and first amendment rights to communicate through the mail for valid legal conditions of confinement claims.


## Deputy Frieze:

Was an employee of the Marion County Sheriff's Office, in charge of monitoring inmates in the MCSO - institutional division at all times relevant to this to this suit.  He was under the color of both State and Federal law at all times relevant to this action. He is sued in both his personal and professional capacities.

## Deputy Straus A-229

Was an employee of the Marion County Sheriff's Office, in charge of monitoring inmates in the MCSO - institutional division at all times relevant to this to this suit. He was under the color of both State and Federal law at all times relevant to this action. He is sued in both his personal and professional capacities for violation of (ORS 160.076 (4) Not administer any physical punishment to any prisoner at any time.)

## Deputy Knospe A-236:

Was an employee of the Marion County Sheriff's Office, acting as officer in charge of monitoring inmates in the MCSO - institutional division at all times relevant to this to this suit. He was under the color of both State and Federal law at all times relevant to this action. He is sued in both his personal and professional capacities for violation of (ORS 160.076 (4) Not administer any physical punishment to any prisoner at any time.)

## Deputy McGowan A-219:

Was an employee of the Marion County Sheriff's Office, in charge of monitoring inmates in the MCSO - institutional division at all times relevant to this to this suit. He was under the color of both State and Federal law at all

times relevant to this action. He is sued in both his personal and professional

capacities for violation of (ORS 160.076 (4) Not administer any physical

punishment to any prisoner at any time.)


**Sheriff Jason Myers:**

Was an employee of the Marion County, in charge of directing the policy

within the jail as it pertained to inmates in the MCSO - institutional division at all

times relevant to this to this suit.  The Sheriff by law was responsible as the

individual for setting jail policy that was in direct conflict with federal law and

denied prisoner rights under the constitution.  He was under the color of both

State and Federal law at all times relevant to this action. He is sued in both his

personal and professional capacities for violation of (ORS 160.076  in not having

policy that allowed inmates both access to regular indoor and outdoor exercise

and the appropriate footwear to actually exercise in.)


## IV.  Exhaustion of Available Remedies.


## Exhaustion of Administrative Remedies.


The plaintiff pursued all remedies, procedures and grievances allowed by

the defendants in this case. As only deputies on duty decide what can be grieved and only hand out forms if they deemed any issue qualified as grievable. Plaintiff filed for Administrative reviews all the way to the jails administrator for all issues allowed to be grieved and served the defendants with a notice of Tort at the earliest time available.

## V. History

Plaintiff was sentenced to the ODOC in July of 2011. Plaintiff was removed from the physical custody of the ODOC by order of the Marion County Courts under ORS 135.767 on 12/16/2015. At that time plaintiff was transferred to the custody of the Marion County Sheriff, he was then under the rules of the Marion County Sheriff's Office(MCSO) to punish inmates/detainee's, allowed them under Oregon law ORS 169.076. Plaintiff was both in the MCSO physical and legal custody until 11/23/2016 and technically still in legal custody of the Marion county sheriff until 8/2017, even though the balance of that time was spent at the Oregon Department of corrections physical custody. It is the plaintiff's belief, absent billing or documentation facts to the contrary, that Marion County still was liable, under state law, for plaintiff's medical and maintenance until that 8/2017

release date from the court, at the end of a criminal proceeding.

Plaintiff had been in the MCSO facility, and under the Oregon law ORS 169.076,(which gives the sheriff authority to punish inmates and provides the law to be followed on the housing of inmates) at the time of the incidents in this suit.

From December 2015 – November 2016, plaintiff was locked down 22.5 / 7[1] hours per day, double bunked in a cell of less then 50 sq ft, including area for the beds and toilet.   This area could not be safely exercised in due to the limited space and sharp edges on all of the furniture and the fact that the floor was slick polished tile and I wasn't issued any footwear that could be used for said exercise.  Plaintiff requested shoes so that he could perform regular exercises out of his cell for the 30 minutes allowed in the outside exercise area as jail staff would not allow any type of exercise inside the jail period.  The outside area was concrete and and wet most of the winter, so unsafe to even walk upon with the foam shower shoes the jail issued, let alone safe to exercise in. (See declaration attachment #R – Photo of outdoor recreation shiny floor).  I was repeatedly denied this request for shoes, as had been required by law and a direct court injunction of the Oregon institutions for years. (See)[2]

---

1). Most of that year prisoners were locked down 24/7 for days on end w/o any reason why, averaging 1-2 hours per week out of cells to shower/shave/ change clothes and books.

2 ( LeMaire v. Maass, 12 F.3d 1444 (9th Cir., 1993) Although inmates had previously been issued only shower thongs, which made exercising on the concrete floors of their cells difficult and dangerous, the district court's injunction required that all inmates be issued tennis shoes for exercise. The state does not dispute that

After denied shoes I requested grievances, no matter the number of requests, from multiple deputies on duty, I was denied the grievances forms and told by deputies that denial of shoes was not an allowed grieved issue. (no issue was grievable unless the deputy on duty said it was grievable and gave out the forms.)

As a result of not being able to exercise I gained weight until medically obese which caused injury to my lower back and contributed to a slip and fall down the slick VC tile stairs with wet shower shoes.(See Declaration Attachment # N.1 ,N.2, N.3  & H)

The only prisoners allowed to wear their shoes were pod workers or those with medical reasons, such as diabetics.

As my weight increased  my back was in constant pain, I could not even walk around slowly in the allowed shower shoes without bruises forming on the soles of my feet and the real fear of slipping on the polished waxed surface inside the jail and outside slipping on the wet or icy concrete in the outdoor air area.[3] The lack of ability to exercise due to no shoes, the lack of care and concern of the county employee's to follow simple law and give some shoes, the extreme weight gain, caused a long term injury to my back and sciatic nerve.

---

requirement.)
3   Marion county jail – outdoor area found unconstitutional as far back as 1996 - Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996) "defendants restricted his exercise to a 8' by 21' by 16' space with a roof, three concrete walls, and a fourth wall of perforated steel admitting sunlight through only the top third). Keenan produced sufficient evidence to proceed to trial on his exercise claim "

This all caused both mental and emotional turmoil, depression and a declining will to live.

At first arrival to the Marion county jail I inquired staff about access to the legal library because I had to file for both appeals and condition of confinement claims stemming from incidents prior to my arrival to the Marion County jail. (See attachment # D - county policy 3215 -@ (21)) I was told that I could not use the legal library because I had a court appointed attorney. When I tried to explain that the court appointed attorney had nothing to do with my needed filings, I was simply told that I had all the access that they were required to provide under the law. I asked for grievances of this and told that denial of law library access could not be grieved because I had a lawyer and refused to give me the grievance forms. It was not until I had fired my court appointed attorney on my criminal charges before I was allowed a single 30 minute session in the legal library, the library of which had no federal case law that I could even look at for more then the 30 minutes before i was told my time was up. The only books allowed checked out were outdated state revised statute books, no case law.

Upon first arrival I was informed by staff that I was not going to be allowed to contact my children and that if I did so I would be punished and sent to the disciplinary unit. When I asked for what legal reason they believed that they

could keep me from contacting my children per a court order after my divorce,

they could not give me any valid reason.  I was allowed to grieve this issue and

refused to allow to be able to contact my children for months, through every

grievance appeal process with the stated reason being that someone at the

ODOC had emailed them and told them not to allow contact.  After months of

appeals and through contacting the Jail commander it was finally told to me that

there was no such record of disallowing me to talk to my children, by this time

my children were severely emotionally distraught with having not heard from me

for many months. (See Declaration attachment #  C - Grievance Form about

children, &  # Q – direct order to not contact).


During my stay at the Marion County jail I wrote multiple books for

publication.  The process in order for me to write and mail out these books

required me to purchase both paper and envelopes from Keefe Commissary

network LLC.  This same requirement was made for all legal mailings outside

the jail.  I could not communicate outside the jail without purchasing these

products.  These prepaid postage envelopes were sold to me in violation of US

code (See Declaration attachment #  E -  U.S. Postal Code ) at a profit to both

Keefe Commissary network LLC and Marion county through it's contract (See

Declaration attachment #  - Contract Marion County / Keefe ...), to provide

mailing products to inmates.  Both defendant's were profiting some 200% plus in

order for  me to access the courts and to freely contact others through the mail.

Marion county defendants specifically would not allow me to mail out my

manuscripts in manila envelopes that could be purchased, claiming that these

could only be used for legal mail.  They specifically made me purchase $.58

envelopes for $1.29 each in order to send out my manuscripts – 6 pages per

envelope for 1200 plus pages of writing.  These defendants only charged .54

cents per envelop for indigent inmates to be credited against their account, a

violation of Equal protection.  In addition, these defendants charged 400 % profit

($.04)per piece of paper and limited paper to only 20 pieces per week without

any penological justification.  They again only charged indigent inmates ($.01)

per piece of the same paper.  These restrictions and illegal charging of U.S.

prepaid postage envelopes hampered my contact with publishers and delayed

my being able to finish writings on time as well as interfering with my ability to

contact friends and family through the mail.  Given the definition of "Indigent

Inmate" by the Marion County policy and procedures, no person whom had

$1.00 in their account the previous 6 months,would qualify for any legal library

materials or supplies to even file any thing with the court if they had allowed

such. The entire policy at the Marion county facility was designed to deny all

access to the courts for all legal claims except those that I was housed under for

criminal charges.

A month before I was to be transferred back to the ODOC on 11/23/2016, I was returning to my cell after a shower. While walking up the stairs I slipped out of my issued wet shower slippers and fell backwards, completing one complete somersault and slamming my head into the upright bars and the concrete floor. This was caused by both the unsafe shower shoes and the fact that the stairs did not have any non slick tabs or other means to prevent such slips. The defendants responded and did virtually nothing but a visual look for blood. Plaintiff was then put on a bottom bunk and left there in pain, not even allowed to eat unless he could get up to get his food tray, which he could not do on multiple days. Later, at the ODOC, from x-rays, he learned that he had damage to his back and issues with his sciatic nerve that did not exist in any record before the fall.

Two days before being transferred back to the ODOC on 11/23/2016, defendants lifted plaintiff up from the floor very roughly, slammed him into a chair, both with his arms behind his back. These rough actions re-injured or additionally injured plaintiff's back. This was witnessed by 50 inmates. Ten minutes after this act, the defendants took plaintiff to the disciplinary unit and

proceeded to rough up and beat plaintiff up while still hand cuffed due to a

payback for allegedly assaulting their co-worker.  The ODOC staff documented

these additional injuries upon plaintiff when he was transferred to the ODOC to

protect themselves. (See Declaration attachment #  F   - ODOC pictures)

## VI. Statement of Claims

## Claim 1. Access to the Courts

**Defendants :** Marion County, Jason Myers, Tad Larson and Officer Dunnbarr,

Keefe Commissary Network LLC, through their acts and or omissions and both

in their failure to apply ORS- 169.076 Standards for local correctional facilities

and/or applying unconstitutional jail policy and procedures illegally, denied

plaintiff access to the courts under the privileges and immunities clause of Article

IV of the Constitution, the amendment petition clause and the 14th amendment

equal protections and due process clauses of the US constitution.  Along with 1st

and  6th amendment issues.

## Supporting Facts :

On December 16, 2015 plaintiff was transferred and housed at the Marion county jail (MCJ) and remained their until 11/23/2016.  Upon arrival to the county facility I immediately inquired about accessing the legal library because I had been in the process of filing multiple actions for criminal post conviction reliefs on two separate convictions. One post conviction was out of Coos County Oregon, for case # 11CR058,  the other post conviction was out of Jackson County Oregon, for case # 113373FE .  In addition, I believed I had a claim against the Oregon Department of Corrections, that I was later able to file when returned to the ODOC for case # 3:17 -CV- 00501-YY.  I also believed that I had a case against the Jackson County Sheriff that I was attempting to file, which I later did when returned to the ODOC, for case # 1:17-CV-00476-YY.  Finally I had a Federal 2255 to file on U.S v Monical, case # 1:17-CV-00474-MC, which I also was able to file once returned to the ODOC.  All of my paperwork had been put into storage at the ODOC prior to transfer to the Marion county jail so I had no information to start the processes no case numbers , no forms and needed both information and legal assistance to file these valid legal claims.

I had statute of limitations deadlines on all of these filings.  I needed access to the legal library and any available legal assistance, as I had zero knowledge

of how to proceed on these legal matters or how to file all of these in the appropriate courts in the appropriate way. At the time there was not a single notice posted or any information available in the C5 unit with regards to how to access, requests for legal materials nor how to question what, if any, legal library resources might be available. At no time during my 11 month stay was there ever information made available to inmates about the law library. There was not a single person in the entire unit of 100 people whom was ever allowed to go to the supposed legal library. This is supported by the declarations of persons who were housed there at the time, Alex Eldabba, Brian Eller, Forest Frost, Daniel Thompson and Thomas Wood.

In addition to the legal issues I arrived at Marion County needing to address, on or about 12/20/2015, I was notified by an Officer Susse that he had been sent an email telling him to tell me that I was not allowed to contact my children in any way or I would be punished and sent to the disciplinary unit. At this time I had a court ordered, joint custody arrangement with my ex-spouse, made during my confinement, for my three children and knew that no one could tell me I could not communicate with my children unless there had been a court order that I was unaware of.

Keeping in contact with my children was extremely important due to the

trauma they faced upon my conviction, I needed to immediately address this denial to communicate with my children with the courts.

I sent a "Kyte" to the legal librarian Sgt. Dunnbarr requesting both assistance with my possible children's custody issues, which seemingly were keeping me from contacting my children. I sent additional kytes requesting help with all of the criminal and federal civil filings and that I needed law library access because of the to statute of limitations I was facing as I had no idea how long I would be housed at the Marion County facility. I was told that I could not have access to the legal library due to the fact that I had an assigned lawyer from the court on the charge I was being housed on and that my other claims were not for issues arising out of my current confinement, and that family civil law matters were not required to be addressed at all period. (See Declaration attachment # D - Marion County Policy and Procedures – 3215 – Law Library @ 5,7,21 ). I attempted to explain in person to Sgt Dunnbarr when he was on the unit that my criminal attorney would not help or represent me on matters that he was not assigned by the court and that I needed to file these matters now as I did not know how long I was going to be at the MCJ. Sgt. Dunnbarr simply replied that he was not required by law or allowed by jail policy to offer any legal assistance and that if I wanted more clarification that I should write to the jail commander and sheriff.

On or about 01/01/2016, I wrote to both the jail commander and the sheriff about the legal library policy and my need to use the facilities and needs for legal assistance, neither replied back.  I asked for and was denied grievance forms from all of the staff unit deputies because they informed me that law library denial was not a grievable issue as no one went to the law library anymore.

As of this date.  Both of my post conviction relief filings were denied for being filed beyond the statute of limitations, resulting in 5 year increase to my overall sentence out of Coos County, case # 11CR0581, and a potential 10 year increase to total prison sentence out of Jackson County, case # 113373FE.  If it had not been but for the policies of these defendants in denying me legal assistance and access to the legal library in order to find out how to file a post conviction, I would have been able to file my post convictions within the 2 year statute of limitations requirements, as I had been denied this same access to the courts while house at the Jackson county jail.

These were lawful convictions and I was not wanting to challenge the convictions but file post convictions for ineffective assistance of counsel that resulted in the incorrect sentences being applied in these cases.  I wanted my right to post conviction relief.

My direct appeal for Jackson County, case # 113373FE was never filed by my attorney so my post conviction time to file expired 2 years from conviction, which was June of 2016, 7 months of which I was at the Marion county jail facility and not allowed to file upon.  My direct appeal for Coos County, case # 11CR0581 ended in September of 2013. I was not allowed legal assistance nor access to the courts to file my post conviction while at the Jackson county jail and needed to do so immediately upon leaving that confinement, for the 11 months while at the Marion county jail I was not allowed this assistance.  The denial of legal assistance and access to the law library to do the required research to file these post convictions directly resulted in my lose to these rights due statute of limitations violation.

On September 7th 2017, Judge Ann Aiken, on  case # 1:17 – CV- 00476-YY, the case that I was able to file after leaving the defendants custody, ruled that a portion of the filed suit was time barred by the statute of limitations, 11 months of which was directly due to MCJ policy and the other defendants, Sheriff Myers, Dunnbarr and Larson, following that illegal policy and denying me access to the courts. (See Declaration attachment # D – Marion County - legal library policy 3215 – @ 7, 18, 21, & see the definitions for " indigent", "legal advice" and "required filings" limiting any 42 USC § 1983 suit to conditions of confinement

cases ONLY for currently housed issues.)

The delay in filing of case # 1:17-CV-00476-YY, was a direct result of these defendants policy and actions. This caused direct harm to my suit against Jackson county and allowed for statute of limitation arguments to be made by the defendants. As of February 5, 2020 the court ruled to time barred some 15 months of my suit against Jackson county due to the statute of limitations arguments (Judicial notice - See court order [ ECF 141] for case # 1:17-CV-00476-YY), 11 months of that denial to suit was directly due to Marion county policies to not allow legal assistance and legal facilities use for conditions of confinement claims that occurred outside of their facility.

The statute of limitations arguments alone have now lasted over one and a half years. This has harmed my ability to this litigate case as witnesses disappear, retire and/or forget due to the lapse of time that would not have been so extended, if not for the defendants illegal actions in denying both access to the legal library and legal assistance to file this valid legal pleading (See Declaration attachment # D – Marion County legal library policy 3215 @ 7,18,21 – policy & definitions for indigent inmates barrs any access to the courts if prisoner had a single dollar on their account in the 6 months prior to request).

Due to the specific facts in the Jackson County case # 1:17-CV-00476-YY, where the defendants denied all exercise[4], phone, visits, (See Declaration

---

4   Jackson County, 1:17-CV-00476-YY- Judicial notice – current ruling ECF 141 – dismissed partial suit of valid

Attachment # S – Jackson County Memo outlining it's unconstitutional violating actions in practice), I lost rights to substantial damages . These acts by Jackson county were unconstitutional on their face, and these defendant's actions and policy of denying access to the courts for indigent inmates and 1983 suits not housed on, has harmed my claim for damages that would have been allowed for 11 months of multiple unconstitutional violations that were clear on the face of the record and valid.

Defendant Dunnbarr claimed in person to me that they were not required to give me access to the  legal library if I had an attorney for ANY legal matter on record, any request from defendant Dunnbarr, no matter the reason for request of legal access (See Declaration attachment #P – request legal books and library time), resulted in either denial or delay because records showed I had an attorney for a case.  I could not even represent myself as these defendants would not allow access to legal resources.

My 2255 motion for case 1:13-cr-00365 was accepted even after being filed late, as the Government did not argue against the late filing.   The right to file this valid claim for ineffective assistance of counsel was still harmed by the blanket denial of right to file and to give legal assistance in filing in the first

claims due statute of limitations.  Plaintiff's supplied the court with proof with ECF 135 - declaration attachments , See attachment Jackson County Memo denying exercise, visits phone, unconstitutional on the face of the record. This memo came from a subpoena served upon the Jackson County Jail during the spring of 2015 for case #1:13-CR-00365-MC, to inquire why plaintiff was being punished continuously.

place.

The right to file a 1983 claim on case # 3:17-CV-00501-YY was denied outright as this claim was not for my conditions of confinement at the Marion county jail. If I had continued to be housed at the jail for additional time I would have lost all rights to file this suit also due to the statute of limitations for filing. The fact that I could file later in no way dismisses the fact that I was not allowed to file due to policy at the jail.

## Claim 2. Conditions of Confinement

### A. Exercise :

**Defendants:** Marion County, Jason Myers and Tad Larson, through their acts and or omissions and both in their failure to apply ORS- 169.076 Standards for local correctional facilities and/or applying unconstitutional jail policy and procedures illegally and denied plaintiff adequate access to both Indoor and Outdoor exercise, by not allowing such exercise time and not providing adequate footwear to exercise safely without injury. (See Declaration Attachment # H) These acts or omissions were atypical and significant hardships. They were done with deliberate indifference to plaintiff constitutional rights and physical health. These policies and or acts were in violation of the 8th

Amendment. The 4th and 14th amendment standards apply to these actions as they were done to a "Detainee" and not a convicted person being housed at the MCJ.

## Supporting facts:

From 12/16/2015 to 11/21/2016 I was confined to a < 50 square foot cell, with a bunk bed and one other detainee. (See Declaration attachment #  G ) This 50 sq.ft. cell size was not large enough to perform any type of exercise in safely due to the sharp corners on the  metal desk and the toilet.  The total actual open floor space was less then 16 sq.ft and that was cut in pieces around the toilet and table.(See Declaration Attachment # O.1 & O.2 – photo inside cell – Marion county detectives)  No one is allowed to exercise inside a cell without the approval of the other occupant as it is such a close space and body odors are offensive so attempted exercise within a cell can lead to an assault.

Plaintiff was confined to this cell 22.5 / 7, with a 30 minute time allowed for supposed outdoor exercise in the morning that consisted of a concrete area with a ceiling open to the sky.  There was another 1 hour out of cell time in the afternoon for showering, book exchange etc.  All meals were eaten on the beds in the cells.  These exercise times were the "supposed"  allowed out of cell time

but did not happen in practice.  In practice we were locked in our cells 24/7 for 3-4 or more days a each week.  In practice we were not allowed to exercise out doors at all because we were not issued any footwear besides shower shoes that were dangerous to just walk in on the indoor polished tile floor or wet polished  outdoor concrete exposed to the sky.  These shower sandals could not be exercised in on such surfaces.  In practice the on duty officers did not allow any indoor exercising period, few officers even allowed slow walking around the unit due to the loudness of the shower shoes on the tile floor.  In practice, NO exercise was allowed for the 11 months I was detained  at the MCJ.

I requested shoes so that I could do exercise or even just do a fast passed walk out of doors when allowed, I was told that they did not offer shoes.  I asked for grievances for this because other jails issued or sold shoes on their commissary and to my knowledge from a prisoner rights book, it was the law, IE that shoes were a required item of clothing for prisoners (See note #2).  I was denied any grievance forms because this was not a grievable issue according to the officers on duty.

As a result of this long term denial of exercise due to both denial to provide adequate footwear (See Declaration attachment # H - evidence picture of shower shoes) and denial to both adequate indoor and outdoor exercise opportunities, I gained significant weight and had sever back pain from lying

around on a bed 23 hrs a day.  My muscles atrophied from this non-movement

and lack of exercise, which likely contributed to my eventual fall down the stairs.

Depression, due to weight gain, deteriorating physical health and a vitamin D

deficiency due to no sunlight all caused mental and emotional damage, constant

suicidal thoughts and further decline in general health.  No one dared mention

such a state of mind as the result would be a stripping naked of all clothing and

bedding and placed into a cold cell for observation, kept awake for days on end

by the checking every 15 minutes, such treatment would turn any semi suicidal

person completely suicidal after such an experience.  It was better to keep quiet.

## B. Negligence – clothing/facility- Monell liability

## Supporting facts:

On arrival to the Marion county jail facility I was issued a pair of foam

shower shoes made by Bob Barker. (See Declaration attachment # H - Evidence

picture of shower shoes) While these shoes may have been adequate for use

inside a shower with a sanded non-slick surface they were dangerous to wear

on a waxed and polished mirror like surface of the jails VC tile floors and stair

treads.  (See Declaration attachment's # N.1 – N.3  – Photo's of MCSO polished

floor/stairs the exact same material) Marion County was negligent in issuing

these type footwear. In the months of my stay at the jail, no fewer then 6

persons had fallen and seriously injured themselves due to these dangerous

shower shoes on this slick flooring.  I had nearly fallen two times previously

when coming down the stairs from a shower and so knew to be very careful.  I

had written the county maintenance personnel multiple times about putting non-

slick strips on the stairs, they refused stating that the treads were non slick. I

had asked multiple officers about issuing safer shoes, they laughed.  Two more

persons fell after these communications at least one of which had to be

removed to the hospital by local emergency medical personnel.  The jails

nursing staff regularly responded to these accidents.

On about November 1st 2016 I had just exited the downstairs C-7/8 section

for showers and was heading up the stairs to return my towel and toiletries.  At

about the 6th or 7th step up from the bottom my wet shower shoe slipped on the

stair tread and my foot slipped out of the shower shoe.  I fell backwards and

tried to catch myself in a sitting position and ended up rolling completely

backwards in a somersault, slamming my head into the stair rail upright and my

entire back into the individual stairs, ending with slamming my head into the

concrete floor.  This happened in front of dozens of persons, not five foot from

half a dozen persons sitting at the adjacent tables. (See Declaration attachment

# A & B – witnesses to incident requested from defendants)

Hitting my head, I lost all vision for a few moments and was paralyzed in pain upon the floor.  My head was ringing, my eyesight blurry, my rear ribs in extreme pain  and my entire lower back in shooting pain.  I ended up being in bed nearly 24/7 for the next 3 weeks with little more then an aspirin.  I couldn't get up to eat most days.  Later this injury was re-injured or further injure by the actions of defendants assaults described later on, which resulted in an additional multiple weeks lying in bed in pain 24/7.

To date my back is still in pain on most days.  Both my arms and legs go to sleep to the point of pain whenever I go to sleep.  I can not sit or stand for very long any day of the week.  I can hardly walk more then a lap around the track at a time without my legs going numb.  All of these issues arose after the fall down the stairs at the jail facility due to both the shoes they issued and the slick unsafe stairs they refused to fix.

After my fall I once again "kyted" maintenance and suggested non-slick tabs be put on the stairs – they replied ," the stairs are non-slick"  which was clearly not the case as they are the same material as the shiny waxed floor. (See Declaration Attachment # M – kyte to facilities )( Declaration Attachments N.1 – N.3)

These defendants actions in issuing dangerous footwear for use on their dangerously slick tile flooring is negligent.  These defendants actions in refusing

to add simple safety precautions on their slick stairs also added to their

negligence in allowing injuries to occur within the facility.  These falls were a

systematically occurring on a regular basis.  These negligent actions were the

proximate cause of my injuries.


## Claim 3. Failure to Protect/Assault


**Defendants:**  Marion County, Jason Myers and Tad Larson, Deputy Knospe,

Deputy Straus and Deputy McGowan, through their acts and or omissions and

both in their failure to apply ORS- 169.076 - Standards for local correctional

facilities and/or applying unconstitutional jail policy and procedures illegally,

denied plaintiff protection from being assaulted by the Marion county defendants

in violation of both state and federal law.  These acts or omissions were atypical

and significant hardships and meant to physically injure my person.  They were

done with deliberate indifference to plaintiff constitutional rights and health.

These  acts were in violation of the 8th Amendment. The 4th and 14th

amendment standards apply to these actions as they were done to a "Detainee"

and not a convicted person being housed at the MCJ.

## Supporting facts:

On the morning of November 21, 2016, deputy Vasquez responded to a call for help by another officer whom was assaulted. During this incident, deputy Vasquez ordered me to the ground at taser point without incident. (See Declaration Attachment # I - Vasquez incident report ). Other backup responded to the call including defendants McGowan , Knospe and Straus. Officer Knospe applied handcuffs to plaintiff behind his back, belly laying on the floor. A few minutes later McGowan came over to plaintiff and pulled / jerking me off the floor, from behind, by my arms, from a sideways position, pulling and twisting my back in the process. Then McGowan frog marched me over to a set of chairs and slammed me into the chair, jamming arms up into and behind my back. Both of these actions re-injured or aggravated an existing injury received three weeks earlier from a slip and fall down the stairs due to Marion Counties neglect to fix slick stairs.

Within a few minutes of these events I was marched roughly down to the disciplinary unit by a number of officer including Knospe and Straus. At no time was I in any way resisting or causing difficulties to the officers. This was all recorded on the jails camera's. Once in the disciplinary unit, defendants Knospe and Straus proceeded to tell me that I was going to be strip searched but before

they did so they started to push me back and forth between the two of them, punching me in the ribs, kidney's on the sides of my stomach, around the head to where my nose bled and to my arms as they were still handcuffed behind my back.  While they were doing this they were making comments, " you think you can just assault an officer an get away with it without consequences ?".

They then stripped searched me, took my bloody clothes and placed me in a cold 60' cell without blankets or bedding. A brief time later McGowan came and took pictures of my person and the various marks on my body.(See Declaration attachments #  J.1 – J.3  -photo's taken by McGowan [5] ) McGowan had not been present when I was assaulted by Knospe and Straus.  Later I was photographed in detail by the Marion County detectives.  These photographs detailed the injuries received from Knospe and Straus's assault as well as the remaining bruises to the head and ribs sustained from my slip/fall down stairs. (See Declaration attachment # K.1 – K.4 -  photo's taken by Marion county detectives).  On November 23,2016 I was transferred to the Oregon Department of Corrections at OSP, I was sent to the disciplinary unit.  A few days after arrival, while staff was removing me from my cell for shower, they noticed the extreme bruising that had developed due to the assault by Knospe and Straus. The officer in charge, Officer Hannon, requested a camera be brought and

_____

5   Notice to the court.  All photographs submitted here by declaration and attached to complaint by reference were accepted into the trial court record for Marion County Case # 17CR06822

pictures be taken of the bruises in order to both document and protect the staff of the ODOC from injury allegations, (See Declaration attachment # F.1– F.4  - ODOC pictures).(see n. 5).

As a result of these injuries caused by the assault by Knospe and Straus, I was physically confined to a bed at the prison for almost two months, just barely able to get out of bed for meals delivered through the door.  I was seen by the nurses and given what pain medication they could offer every two hours.  Later the ODOC took multiple x-rays of my lower back due to both numbness and constant pain to my arms and legs.  Currently my back has been in ever increasing constant pain, I can not sit or stand for very long without numbness and can but slowly walk. My sciatic nerve has now combined with the other pain, all of which is stemming from the same exact lower back location injured by the defendants. The doctor has recently told me that I should do nothing but lay on my back as much as possible and do nothing else.

## Claim 4. Medical neglect to serious medical need

**Defendants:**  Marion County, Jason Myers Cindy Gage and deputy Frieze, through their acts and or omissions and both in their failure to apply ORS-

169.076 - Standards for local correctional facilities and/or applying

unconstitutional jail policy and procedures illegally, denied plaintiff adequate

medical care for injuries sustained from falling down stairs. These acts or

omissions were atypical and significant hardships and meant to cause physical

suffering.  They were done with deliberate indifference to plaintiff constitutional

rights and health.  These  acts were in violation of the 8th Amendment. The 4th

and 14th amendment standards apply to these actions as they were done to a

"Detainee" and not a convicted person being housed at the MCJ.

**<u>Supporting Facts :</u>**

On or about the morning of November 1, 2016, I had just exited the

downstairs shower stall and was heading back up to my cell to put away my

towel and toiletries.  At about the 6th or 7th step up from the main floor my foot

slipped either on the stair or out of the issued plastic showers shoes.  As my

hands were full I failed to grab onto the rail and ended up rolling backwards

down the stairs slamming both my back/ribs into the steps. At one complete

rotation the back right side of my head struck the upright metal handrail pole.  I

then rolled out into the tile floor striking my head again on the concrete floor

hard enough to lose eyesight in a flash of light and pain.  I was knocked

senseless and remained on the floor curled on my side. This was in front of some dozen person sitting at tables next to the stairs. Deputy Frieze ran over and told me not to move as he called for the nurse Cindy Gage. <u>(See Declaration Attachment # Q @ 11/01/2016 – report of incident)</u> Defendant Gage came into the unit with her trainee and walked over and looked down at me on the floor. She asked if I was bleeding. She bent over, pulled up my shirt to glance at my back. She stood up said she could give me some Tylenol for 5 days and an ice pack, turned around and walked out. I couldn't get up off the floor or even walk back up the stairs without assistance. My back and ribs were in extreme pain, something was separated.

Deputy Frieze moved me to a downstairs cell on the bottom bunk. Later , when I was lying in bed with muscle spasms , defendant frieze refused to allow the nurse to bring pain medication (Tylenol/Ibuprofen) to the cell door and demanded that if I wanted the pain medication that I would have to go stand in line and get it – which I could not do easily due to the extreme pain in my back. (The staff often came to each cell door to give out medication). The staff would not give me enough medication to where I could even get up out of bed. I had to beg other inmates for their purchased pain relievers, in violation of the rules, as indigent inmates were only allowed a single pack of both Tylenol/Ibuprofen per week and not allowed to share anything with other inmates. County policy

dictated that I had to live in constant excruciating pain for weeks on end as they only allowed pain relievers to alleviate the pain for no more then two hours per week.

For the next few days I was not allowed to eat because the officer on duty would not let my room mate (Forest Frost), get my food tray and bring it into the cell. I could not get the food tray myself because the pain was so great that I dare not even try to roll out of bed. This denial was done even though it was common for other that were handicapped or in wheel chairs to have others get their food trays for them as all meals were eaten in the cell anyway.

Plaintiff pleaded with the defendants to please do something to look at his back, something for the pain other then 3 Tylenol a day as my back felt as perhaps his ribs were cracked or separated, defendants refused to look unless I agreed to pay a $ 10.00 doctor visit fee to both nurse and doctor for an injury caused by the defendants wet/dangerous stairs and slick shower shoes they issued. At 5 days of Tylenol the defendants refused to give anymore and told me that I could purchase some on the canteen – which I could not as I was indigent at the time. I could get 2 packs per week without money. Even if I had had money at the time I would have had to still lay around in pain for over a week until I could purchase some. The defendants policies and actions caused needless pain and suffering and weeks worth of missed meals due to not being

able to get up for them.

## Claim 5. First Amendment Violation

**Defendants:**    Marion County, Tad Larson, Jason Myers Dunnbarr, Keefe

Commissary Network LLC,  through their acts and or omissions and both in their

failure to apply ORS- 169.076 - Standards for local correctional facilities and/or

applying unconstitutional jail policy and procedures illegally, denied and or

restricted, 1). plaintiff's right to," freedom of association " under the First

Amendment for harming his family relationships and 2). practice his free speech

through the mail unhampered and by law to both the courts, publisher and

family. These  acts were in violation of the laws against monopolies, 1st

Amendment, Equal protections for charging different prices to similarly situated

persons for paper and postage and for the blatant violation of U.S. Postal code

for charging excessive postage in order to profit off of my free speech.  The 4th

and 14th amendment standards apply to these actions as they were done to a

"Detainee" and not a convicted person being housed at the MCJ.

**Supporting facts :**

1. After arrival to the Marion county jail on 12/16/2015 ,I was told by Officer

Susse on 12/21/2015, that he had received an email from his superiors telling

him to inform me that I was not allowed to speak with or contact my children in

any way while at the jail, and that this was a direct order (See Declaration

Attachment # Q @ 12/21/2015) and if i violated it I would be placed into

disciplinary segregation. I was not told on what legal basis this threat was being

made.  One of my three children was 19 at the time and I was still being told to

have no contact.  I filed a grievance (See Declaration attachment #  C -

Grievance form).  The process took months to complete and get a final answer

on, no one could tell me WHY I could not legally speak or contact my children.  I

was denied any other notice or process under the policy and procedures of the

MCSO to resolve this issue.  I was given no due process in this matter.  My

children did not know what had happened to their father as any mail to the

prison was not forwarded to me or returned, this no contact order caused

extreme anxiety in my children and permanently harmed my relationship with

them due to the fact that they believed that it was my personal decision to stop

contacting them or that I was injured or had done something in prison.  I missed

Christmas,New Years and birthdays for my children as well as Valentines, a

yearly expectation for a father with three daughters. It took months to finally get a letter from the MCJ commander telling me that he had looked into the issue and could find no reason as to why I was not being allowed to contact my children. His letter clearly stated that he could find not email on the matter and he said I could write/call my children. By this time the harm to my relationship with my three daughters had already been done. This harm was directly the result of these defendants actions.

2. During my stay at the MCSO – correctional division facility I only had money on my trust account on a few occasions for postage. During this time I had both legal mailings and personal book publishing mailings to go outside the jail facility. During this time I wrote two books, one that was 450 pages and the other 825 pages. To make any mailings outside the jail I had to purchase both paper and envelopes through the jails commissary system operated by Keefe Commissary Network LLC, of which is under contract with Marion county with a kickback of 15% for all commissary purchases. When I was indigent I was charged .01/ per sheet of paper for a maximum of 5 sheets per week. When I had money on my account I was charged .04/ per sheet of paper with a maximum paper amount of 20 sheets per week. Standard rate postage at the time was .54 per prepaid stamped envelope of which I was charged when I was

indigent and 1.29 per prepaid stamped envelope when I had money on my account. The facility also sold manila envelopes for mailing.

My first book took over a month to leave the facility after I placed it into the mailing system at the jail. Staff could not tell me why they held my mail for so long. They then took my manila envelope to the post office and had them mail it for the maximum amount they could charge, costing me $11 plus dollars for a mailing I had been paying only $1.82 for for the years previous. I filed a grievance on the excessive cost issue with no result. The delay in mailing my manuscript out for a month caused a publishing due date to be missed and harmed a relationship. When I attempted to mail out my second manuscript I was flatly refused - (See Declaration attachment # L.1 – L.3 - kyte from Dunnbarr, mail issues) I was told that only legal mail could be mailed out in the manila envelopes – which was not a rule or policy stated anywhere in the facility. I was told that I had to use the first class prepaid envelopes for personal use. I could not mail out 125 separate envelopes in order to mail out my entire manuscript. I missed additional publishing deadlines.

I was denied grievances on this issue of using manila envelopes as ," mailing items are provided for in commissary and thus not grievable"," county mail policy is not grievable". I could not get a grievance form for this 2nd mail issue as only an on duty officer can give out grievances and I could mail out my

papers in regular non-manila envelopes.  I wrote to the jail commander and was

denied even a reply.


These defendants also chilled my first amendment rights by having a

system in place that was profiting from my writing by forcing me to purchase

prepaid envelopes at $1.29 each when the same exact envelope at the Oregon

State Prison was sold by law at $.58 because the state is not allowed to profit on

an inmates personal or legal filings and mailings, which was exactly what Marion

County was and is still doing today (IE. Profiting on both communication outside

a jail facility and legal filings – in my case my manuscript).  The same can be

said for the selling of regular writing paper for both personal and legal use.

Indigent inmates were sold paper at .01 per sheet , non- indigent at .04 per

sheet. Marion county was and is still profiting from all first amendment

communications allowed under the constitution.  These prices are not just

monopolized for the prisoner but for family members whom place the money

onto an inmates account so that they can be written to.  These defendants in

effect are charging a "Tax"  on inmates whom can pay for mailing and writing

products while indigent persons pay a different price altogether.  Jail policy

would not even allow simple extra blank pieces of paper to be mailed to in to me

along with a letter.  There was no reasonable penological justification for such

denial.. The only reason to deny blank paper was so that they could continue to profit of the sell of their paper at 400% profit. They owned the monopoly on all such First amendment allowed communication.

While there is no constitutional right to pay cheap postage and paper rates, there is a right of access to the courts, freedom of association and freedom of being taxed or profited from by the government without representation – which was the result of charging excessive postage on my book manuscripts writing and mailings as well as hindering my ability to access the courts. The state should not be profiting from my free speech. To me there would be no difference then having been charged a fee to visit my family or write a letter to the president. These defendants went out of their way to profit from my free speech in every way they could.

## VII Relief

Wherefore plaintiff requests that the court grant him relief, through a jury trial, with the following sought awards :

That the court award to me against all defendants jointly and severally, an

amount that the jury seems fit and separately for each claim against them described herein, for the violations of my constitutional rights of 1st, 4th, 8th and 14th amendments under the U.S. Constitution.

The following amounts :


1).    For the damages caused by the assault, injury and pain and suffering caused by defendants Straus, Knospe and McGowan, a sum certain amount equivalent 35 days spent in bed at ODOC due to injuries $10,600.00.  For a punitive award, for the statutorily illegal actions of defendants Straus, Knospe and McGowan, (ORS 169.076 – no physical punishment)( Marion county policy 3205(14)– in instituting their excessive use of force and assault against me, an amount of $5000.00  per individual.


2).    For the damages caused by the negligence of Marion county in both issuing dangerous shower shoes and for not fixing the slick stairs, causing permanent back injury, an amount equal to $250,000.00.  As a punitive award for not fixing the issue after multiple reported incidents $25,000.00.


3).    For the damages caused by Marion County policy and procedures for

not allowing both indoor or outdoor exercise and not providing adequate footwear to be exercised in for over 330 days, which caused a recognized decline in both physical and mental health, muscle atrophy, 330 x $250.00=$82,500.00. As a punitive award for violating clearly established law with regards to exercise of inmates, $25,000.00. As a declaratory judgment I ask that the defendants be made to issue, sell or otherwise allow inmates to wear footwear that is appropriate and safe to exercise in.

4).    For the damages of Marion County's policy in denial of legal access for any conditions of confinement matter not housed upon and for denial of legal assistance on both conditions of confinement claims and legal criminal matters not covered by assigned attorney, I request the following amounts for the following cases.

a.    For case # 1:17-CV-00476-YY , loss of partial claim due to statute of limitations caused by denial of legal assistance and access to the courts and policy of not allowing 42USC§1983 filings for indigent or issues not housed on. $ 11 months loss = to 330 days X 250.00/ day for exercise denial = $82,500.00. Other constitutional rights violations lost due to statute of limitations, access to the courts, visits, emergency medical $

125,000.00.

b.  For case # Coos County Oregon, for case # 11CR0581, lost right to post conviction due statute of limitations ruling caused by Marion county policy and current practice in denying legal assistance. 365 days x 5 @ $ 250.00/day = $456,250.00

c.  For case # Jackson County Oregon, for case # 113373FE, lost right for post- conviction due to statute of limitations caused by Marion county policy. 356 days x10 @ $250.00/day = $912,500.00

d.    For cases 1:13-CR-00365-MC and 3:17-CV-00501-YY declaration of error in denying access to the courts for 42 USC§1983's not housed on, agreement to post all of Marion county legal library policy and procedures 3215 in each unit describing the requirements to access the library and provide copies of " Prisoners Litigation Manuel" to each housing unit. And change policy to address illegal denial of indigent court filings based upon a certain financial threshold along with allowing filings for ANY 1983 suit brought.

5).

    a.    For the 1st Amendment violation damages caused by the unconstitutional denial of contact between me and my children, " freedom of association" for over three months in violation of the first amendment and for the emotional stress and trauma caused to my relationships, an amount in the sum of $18,000.00.

    b.    For the 1st Amendment violation in profiting from my writings by selling prepaid envelopes at a rate in violation of the U.S Postal law, and denying me adequate access to mailing my manuscripts outside of the prison and causing delay and missing of deadlines, an amount equal to $5000.00.

6). For the pain and suffering caused by the denial to give adequate medical care and pain relief due to both practice and policy of Marion county, for three weeks confined to bed in pain at the Marion county jail, to the point of not being able to eat. The sum of $5000.00.

7).    Grant plaintiff such other just and equitable relief as it may appear plaintiff is entitled, including but not limited to, all costs for filing, copies and postage, professional witness fee's and the costs of investigators.

## Conclusion

I make these claims and statements in this complaint on the knowledge available to me at this time with respects to the named defendants and the facts of which I have stated herein and supported by my attached declaration attachments. I know these statements can be made use as evidence under the penalty of perjury.

Dated and Executed this 19th day of February 2020,

Bradley W. Monical
#7803214
2605 State Street
Salem Oregon, 97310