Bradley W. Monical
#7803214
2605 State Street
Salem, Oregon, 97310

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BRADLEY W. MONICAL, | ) | CASE NO: 6:18-CV-00103-YY |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Motion for leave to file |
| | ) | Fourth amended |
| VS. | ) | complaint (4thAC) |
| | ) | 42 U.S.C § 1983 |
| | ) | |
| | ) | |
| | ) | |
| MARION COUNTY, ET AL. | ) | |
| Defendants, | ) | |

    I, Bradley W. Monical, move this court for leave to file a (4thAC) fourth amended complaint to cure any issues that arose during the [Dkt 200 hearing]. This amended complaint specifically resolves all matters previously raised by defendants and will move the case to conclusion.

    The court dismissed the complaint without prejudice as required by Wyatt v. Terhune, 315 f.3d 1108, 1120 (9th Cir. 2003), as there possibly existed facts that could cure a dismissal under the PLRA "failure to exhaust" defense. The court specifically determined and inferred that plaintiff could write to the Marion county jail commander, after a transfer, and ask for

grievances to be given for all issues earlier refused as well as ask for review of final grievances on postage issues and denial of visitation with children.

Plaintiff, following the Marion county grievance policy given to inmates (see Decl/Monical/Exh. # 10 pg. 13) requested the grievance forms within the timelines outlined by the defendant's policy.[1] These requests are attached herein as (Decl/Monical/Exh. 1-4). Plaintiff additionally served defendant, Tad Larson, with requests for grievance forms for every issue still allowed to be grieved under defendant's policy (See Decl/Monical/Exh. # 4 w/attachment).

With respects to any previously filed grievance, plaintiff served the request upon defendant Tad Larson (see Decl/Monical/Exh. # 2- grievance appeal) defendants replied with letters explicitly showing that all grievances were terminated and "deemed resolved" upon the day of plaintiff's release from their custody (see Decl/Monical/Exh. # 6 – Marion county jail commander – Tad Larson's letter dated Oct, 17, 2022, Re: final grievance appeals Exh. 11,12). In, Tad Larson's, letter, he attached and supplied a long overdue discovery requested document, supplemental of which was required under FRCP 37, (see Decl/Monical/Exh. #7 – policy 3520 – inmate grievance @ 19) showing that policy, all along, had clearly dictated that all earlier filed grievances were "deemed resolved", upon release.

Nowhere in this policy though, did it include or exclude TRANSFERRED prisoners grievance procedures or detail how transferred prisoners were to go about filing or continuing their grievance processes.[2] Nowhere in the policy, actually shown to inmates, did it give a time

---

[1] Decl/Monical/supp/4thAC -Exh. # 10 – Marion county inmate manual - @ pg 13, shows that there was No required time frame in which a grievance, or appeal thereof, had to be initiated or requested. Under defendant's policy such requests could be made at ANY time. Defendants testimony at [Dkt 200] hearing TR. Davis pg 80 @8-25, 81@1-11] verified this fact.

[2] In this case, all issues in the complaint occurred within 90 days of transfer and thus, even under the unpublished "official" grievance policy of defendants (see decl. Monical/supp Exh. #

frame on when grievance requests were required to be asked for, by transferred prisoners, after a prisoner was transferred.[3] Thus, plaintiff was technically allowed under clearly established law to request such grievance forms as a plaintiff only has to follow a given institutions grievance procedure and the policy was silent on the issue of transfers as opposed to released persons. [4],[5]

This same policy of defendants, also allows the "tolling" of the statute of limitations[6] because there existed no deadline for when a <u>transferred</u> person was required to request

---

7) Plaintiff would have been allowed to file grievances after a transfer, had there been any instructions on how to do so. Dillon v. Roger, 596 f.3d 260, 267(5th Cir 2010) (court will need to consider what remedies were available in light of transfer"; Lawson v. Youngblood (E.D. Cal. 2014 1:09-cv-00992-LJO-MJS (PC); Hartry v. County of Suffolk, 755 F.Supp.2d 422, 432 (E.D.N.Y. 2010)(inmate's transfer to a new prison within two days of attack by another inmate made administrative remedies effectively unavailable) Muller v. Stinson, WL 1466095 @ 2(N.D.N.Y. Sept. 25 2000) pg.7 ( If plaintiff[could not finish procedure] because of his transfer, then he is not re-quired to exhaust (see note 9 for all case law that is on point) ; Henry v. Hullett, 969 F.3d 769 (7th Cir. 2020)(transfer to new facility where there is no access to the old facility's grievance system means there are no remedies to exhaust)) Bradley 441 f.supp 2d 97, pg 102

[3] (Plaintiff had been transferred to the ODOC on 11/23/2016, but still remained in the legal custody of defendants under court order.)

[4] See Pozo v. McCaughtry, 286 F. 3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015) (citing Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88, 126 S.Ct. 2378). it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.". Williams v. Wexford Health Sources, Inc., 957 F.3d 828, 833–34 (7th Cir. 2020) (explaining inmates must complete the prison's required steps, but that "does not mean that [an] inmate must go beyond the established system and guess at some other way of attracting the attention of the prison authorities").

[5] This is aside from the clear fact that defendants have already testified that there was no process for transferred prisoners and that they were not given any information about continuing a grievance or being able to file one after a transfer (see. Davis TR. Pg 73@ 23-24, 74@ 1-15, 79@17)

[6] Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process. See Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir.2001) ("We thus hold that in the ordinary case, a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner

grievance forms, and thus opens the door for a 4th amended complaint to be filed. Under clearly established law, the amended complaint will supersede all earlier complaints. Plaintiff requested grievance forms as allowed under defendant's policy, defendants responded, (see Monical Decl. Exh. # 15 – Nov, 3 2022), thus defendants own policy tolled the statute of limitations and would result in a complete new separate filing.

Defendants, finally, weeks and months after requesting of grievance forms), (see Decl/Monical/Exh. # 1-4), allowed under their shown policy, (see Monical/Decl Exh. 10 @ pg. 13) sent the requested forms (see Monical Decl. Exh. # 15 – Nov, 3 2022), showing that a process was supposedly still available, but defendants did not include a single instruction on when or where the grievance was to be sent, or a copy of the policy that allowed the filing of grievances after a release or transfer. In addition, defendants long delay, in replying to requested issues to be grieved, violated their own policy of replying in 5 days, (See Monical/Decl. # 10 @pg. 13 and Exh. 7@4) and thus under clearly established law, they made their OWN grievance procedure [7] effectively unavailable and fully exhausted.[8] Plaintiff has gone well outside the

---

completes the administrative grievance process."); Harris v. Hegman, 198 F.3d 153, 157-59 (5th Cir. 1999) (under PLRA exhaustion requirement, limitations on a prisoner's § 1983 claims is tolled during administrative proceedings).

[7] (see Decl/Monical/supp/Exh. # 10 pg. 13 - 5 days to reply to each step of grievance, the first step is requesting a form)

[8] Hayes v. Dahlke, 976 F.3d 259, 271 (2nd Cir. 2020)( we join six other circuits that have considered state prison procedures with similar mandatory deadlines and found that the administrative remedies were either exhausted or "unavailable" when the prison did not respond within the allotted time); Powe v. Ennis , 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.");

requirements to obtain grievance forms from defendants, all without resolution. (see Decl/Monical/Exh. # 5- Decl. B. Farlow) This allows for all issues to be settled and a (4thAC) to be entered and all issues resolved. No further Discovery would be required except that which the court has already ordered turned over by the defendants in earlier Orders [DKT 100]

Additionally, discovery just recently received, in the form of a declaration, by a witness, defendants also failed to disclose or supplement requests under FRCP 37(c), (see Monical/Decl/supp/exh. att # 8 -Decl. R. Davis) supports the claim that plaintiff had requested and was denied grievance forms, along with supporting the addition of claims not earlier submitted in earlier complaints. (see note 7) Discovery just recently turned over in the [Dkt 200- hearing and submitted to the court Dkt 196 att. A] along with the document shown herein, mentioned by defendant's attorney, John Adams (see Decl/Monical/Exh. # 9 -medical request for

---

Shifflett v. Korszniak , 934 F.3d 356, 365 (3d Cir. 2019) ("[W]e hold that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement.");

Jernigan v. Stuchell , 304 F.3d 1030, 1032 (10th Cir. 2002) (noting that "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable,"

Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3rd Cir. 2020) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies.")

Hardy v. Shaikh, 959 F.3d 578, 586(3rd Cir. 2020) recognizing that just as "prisoners [must] comply with the procedural demands of a system created by their jailors[,]" "[n]o less must prisons comply with the demands of the system they created"—we require "strict compliance by prison officials with their own policies,
King v. McCarty, 781 F.3d 889, 896 (7th Cir. 2015) Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about. See Pavey v. Conley, 663 F.3d 899, 906 (7th Cir.2011); Curtis v. Timberlake, 436 F.3d 709, 712 (7th Cir.2005); Carroll v. Yates, 362 F.3d 984, 985 (7th Cir.2004). They are not required to divine the availability of other procedures.

injury) also support the claims of denial of medical care, as defendants were still legally required to accommodate plaintiffs' medical issues while in their LEGAL custody.

Additional discovery that defendants failed to supplement under FRCP 37, and submitted now supporting the 4thAC, is the completed grievance of Pedro Segura, in 8/16/2021, with regards to defendants TAXING of free speech by selling a U.S. security, IE U.S postage, in violation of U.S. postal code and enforced by the court under 28 USC § 1339. The Grievance shows that defendants do not actually have an "available remedy" to correct their illegal and unconstitutional actions. (see Decl/Monical/supp/ Exh. #13 - Segura Grievance) Telling an individual they can chose a different "product" to communicate outside the jail facility is not a remedy to the issue of "taxing" written speech. Defendants were not selling a "stamp and envelope" for $1.29, they were selling a Stamp period for $1.29, that stamp was sold AS an envelope by U.S. postal service (see Decl/Monical/supp/ Exh. # 14 – Defendants pre-stamped U.S. postage envelope)[9]. This grievance also shows that KCN was never a part of the grievance

---

[9] Under 18 U.S.C. § 1721 ("Sale or pledge of stamps"). Postal contractors are not allowed charge extra for postage stamps or U.S postal products
U.S.postage stampsBiddle v. Luvisch, 287 F. 699 (8th Cir. 1923) 'obligation or other security of the United States' shall be held to mean all * * * stamps and other representatives of value, of whatever denomina-tion, which have been or may be issued under any Act of Congress. ' Comp. St. Sec. 10317;   United States v. ONE ZUMSTEIN BRIEFMARKEN KATALOG 1938, 24 F.Supp. 516 (W.D. Pa. 1938) Section 147 of the Criminal Code, 18 U.S.C. § 261, 18 U. S.C.A. § 261, in defining the words "obligation or other security of the United States" specifically includes "stamps and other representatives of value, of whatever denomination, which have been or may be issued un-der any Act of Congress".  In Reinbrecht v. Walgreen Co., 16 Neb.App. 108, 113, 742 N.W.2d 243 (2007) the court decided selling postage at above the U.S. postage rate was a deceptive practice.("Reinbrecht now knows the truth regarding the price of the postage stamps sold by Walgreens. Therefore, any deception or damage… **as a result of Walgreens' alleged deceptive practices in regard to its sale** of postage stamps")

process and thus again a complete dead-end procedure without any authority to provide any relief.[10]

I add the following claims to this suit, Denial of PREA filing, earlier withdrawn on SAC [18-19] to avoid a court stay [Dkt. 23], but now supported by the discovery document requesting to make a complaint. (see Decl./Monical/supp Exh. # 4 att A)

I support this motion for leave to file fourth amended complaint (4thAC) with declaration and exhibits, an attached fourth amended complaint.

Respectfully Submitted this 9th day of November 2022

Bradley W. Monical
#7803214
2605 state street
Salem, Oregon, 97310

---

[10] "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir.2004) (quoting Booth v. Churner, 532 U.S. 731, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). The court in Booth @ 736, (neither [party] denies that some redress for a wrong is pre-supposedly the statutes requirement of an 'Available remedy'; neither argues that exhaustion is required where the relevant administrative procedure lacks authority to provide relief or to take any action whatsoever in response to a complaint ( see also Id. Booth@736 n.4 121 s. ct. 1819(without the possibility of some relief, the administrative officers would presumedly have no authority to act on the subject of the complaint, leaving the inmate nothing to exhaust.).

## Certificate of Service

I, Bradley W. Monical, do hereby certify that I placed," Motion for leave file fourth amended complaint"," Declaration of Brad Monical in support of Motion for leave… with 15 attachments in support of motion and attached 4thAC." into the Oregon Department of Corrections mailing system at OSP, into a first-class postage paid envelope, for case, Monical v. Marion county, et al. 6:18-CV-00103-YY, addressed to the following below, on November 9, 2022. I certify that these documents will also be sent out by electronic means, through the courts case management/electronic case filing system [ECF] for all parties registered, upon the court clerks filing.

Marion County Legal Counsel
Curtis M. Glaccum #161732
P.O. Box 14500
Salem, Oregon, 97309

Clerk of the court – US District Court
1000 S.W. Third Ave, Suite 740
Portland, Oregon, 97204

Keefe Commissary Network
Bodyfelt Mount LLP
Vicki Smith
319 S.W. Washington St. Suite 1200
Portland, Oregon, 97204

November 9, 2022

*Bradley W. Monical* (signature)

Bradley W. Monical #7803214
2605 State Street.
Salem, Oregon, 97310

Monical v. Marion County / 6:18-CV-00103-YY / Certificate of Service/ Motion /leave/4thAC